The Honorable Court will rise. The Honorable United States Court of Appeals for the First Circuit shall in session. All persons having any business before this Honorable Court may draw near, give their attendance, and they shall be heard. God save the United States of America and this Honorable Court. Please be seated. Court is in session. Good morning, and let's start calling the cases. Yes, Judge. Today's cases will be called as previously announced and the time will be as allotted to counsel. The first case today is number 21-1937, United States v. Hiram Jose Ruiz-Valle. And at this time, would Attorney LaRoy please introduce herself on the record to begin? Good morning. Joanna LaRoy, the Federal Public Defender, on behalf of Mr. Hiram Ruiz-Valle. Good morning. May I please reserve three minutes for rebuttal? You may. In enacting the supervised release statute, specifically Section H, which concerns new terms of supervised release upon revocation, and Section E3, the reimprisonment provision, Congress imposed aggregate limits on each respective part of revocation sentences to read those provisions otherwise is to condemn supervisees to a term of life imprisonment in installments, an incredible leap from the text of the statute that Congress has shown no evidence of supporting. Let me ask you something about life imprisonment, because under the current sentence, he will serve this sentence. There's no issue, and the parties agree there's no more supervised release to follow. So after he serves this term of imprisonment, that's it for him. He's out scot-free. Well, that's what the parties are arguing on appeal. However, the court below imposed one year of supervised release. So in theory, he could be revoked again and serve more time. Assuming we agree with your client and the U.S., and there's no dispute as to that, then this is not going to go per secular seculorum. This is it for him. That's exactly right, Your Honor. If the court today reads Section H the way the government concedes and the way that we argue today, the issue that he could potentially get perpetual supervision and therefore perpetual imprisonment does go away. At least in this case. There may be a future case where there's, you know. Exactly. At least in this case, in his type of offense that was committed here, that's exactly right. But it does not change the fact that under Section E3, he was imposed a term of re-imprisonment that exceeded what was allowed by law, and the way that the court has been interpreting it or the government has interpreted it, that's always what can happen. If we look at the language of E3, and there are two clauses essentially, Clause 1 and Clause 2, separated by the words, accept that. Clause 1 says, for a Class C underlying felony as we have here, that the court may require the defendant to serve in prison all or part of the supervised release term authorized by statute, three years. So it's saying that that's empowering the court to revoke and re-imprison up to three years for a Class C felony. That's what the court has the power to do. Clause 2 limits that and then says, accept that on any such revocation. So for one revocation at a time, they can only get up to two years. So under the government's reading, if that just refreshes forever, they could get, a person could get two years for their first revocation. Another two years on their second revocation if they're revoked again. So now they've served four years in prison. But the court is only empowered to impose up to three years of re-imprisonment under Clause 1. So under your argument, it would be similar to the supervised release term. You start subtracting and, you know, if there's only two months left of that 24-month period, that is it. You can't re-sentence to the maximum again and again and again until no more supervision to follow. That's exactly right. It's in harmony with Section H in that way in that Stephen Colvin or two other Apologies. Essentially, yes, that's exactly right, Your Honor. And let me also ask you, you're aware that all the other circuits have ruled against your client. Obviously, this issue is new here. But there's no circuit court of appeals that has ruled regarding the position that you're taking. That's correct, but the holdings in the other circuits, is not the same as what we're asking today. But the reasonings, this issue is not addressed. This relationship between 1 and 2 is not addressed. So that's what I was asking, if you can distinguish that. Yes. Yes, absolutely. So Clause 2, everyone Excuse me. In distinguishing it, could you also sort of fold in whatever your best argument is about congressional intent? Because in thinking it through, I kept trying to figure out, well, what was Congress trying to do? Yes, absolutely. So it all relates to this relationship between Clause 1 and Clause 2. The other circuits focus exclusively on Clause 2. And I think it's in part because you have a nice, neat list of the class of felony and then how much time they can get. So the arguments in the other circuits, in fact, the Tenth Circuit even states in United States v. Hernandez, that the Tenth Circuit says that they're only ruling as to Clause 2 because that's the argument before them. Is that the aggregate limit? It's possible that Clause 1 includes the aggregate limit, but that's not before us today. So I think the other circuits haven't viewed this in completion as the relationship between Clause 1 and Clause 2. They focus only on Clause 2. And that relates to legislative history because in 1994, Congress amended this language. And as the court said in Tapia Escalera, there's an unusually explicit legislative history there where Congress states that there needs to be an aggregate limit in E3 and gives an example. And then as a result, courts were interpreting the lower limit here in Clause 2, the two years, as the aggregate limit. And then in 2003, to correct that, to show that the Clause 1 is actually the aggregate limit, the higher limit, which makes sense because why would you have two limits, one higher and one lower, if the lower limit is the cap and you can never reach the higher limit? So they were clarifying by adding on any such revocation language that Clause 1 is actually that higher limit, is the aggregate cap. You can never get more of a total of three, but two years is a per revocation limit. So that's what Congress was sort of cleaning up because the courts were erring in their interpretation of the statute prior to 2003. So that's the sort of legislative history of E3. And then circuit courts after that just honed in on Clause 2 to say, well, that's Congress. It's not the aggregate limit. That's why Congress, you know, amended it. And that's fine. But then you have to look up that Clause 1 that specifically has a concrete number that refers to Section B of the statute, which is the list of supervised release terms authorized by statute. Let me ask this hypothetical. And assume under your theory there's, for example, child pornography cases, it could be up to lifetime of supervised release. Exactly. But if somebody has lifetime of supervised release, there would come a point under your theory, if the person continues to violate supervised release, there's the aggregate. And then if the person, let's assume he's 30 years old, he's now 40, he's violated so many times he's been in jail, so he can't be put in jail anymore, but he would still be in supervised release. So under that scenario, wouldn't that favor the congressional intent that individuals be, the courts be allowed to sentence individuals not aggregately but for violation? Well, the arguments we're making today wouldn't apply to any underlying offense that explicitly Congress has said can get up to life of supervised release. So for sex offenses under Section K, certain drug offenses under Section 841, because Clause 1 refers to the supervised release authorized by statute as the cap, their cap is life. So their aggregate cap is also, in theory, life. I mean, we haven't briefed that issue, obviously. But their aggregate cap is going to be the same amount as their supervised release cap, which is life. So those specific offenses that Congress has explicitly enumerated that their supervised release term can be life, that wouldn't fall into the arguments that we're making today. But it also highlights that Congress explicitly did that for certain offenses. So for all other offenses, Congress did not explicitly allow for life supervised release and, therefore, life re-imprisonment. So, therefore, we have to read an aggregate cap into this, not only because the language compels it, but because Congress, having done it otherwise, is not doing that here. We know that Congress would affirmatively say they can get life of supervised release and, therefore, life re-imprisonment. So those separate offenses highlight the fact that for all other offenses, there must be an aggregate cap. And that's aggregate cap. And that is the Clause 1 aggregate cap for Class C. That is three years. And that, as I said, comports with the legislative history as well, to correct the fact that courts prior to 2003 were reading the Clause 2, the lower cap, as the aggregate cap. So here, Mr. Iram had already served 22 months in prison, could only get up to three years. That's explicitly what the court is empowered to do and no more under Clause 1. So he could have only gotten up to 14 months of re-imprisonment in this case, and he got 24 months. Let me ask you, there's an argument that the government makes. It's estoppel. And in the court below, your colleague from the Federal Defender Office argued for a particular sentence. He got a higher sentence, and he got supervised release. But aren't you taking an inconsistent position? And I know there's an argument that the government should have corrected that, even though your colleague made perhaps, in your opinion, the wrong argument, or the court should have stepped in and corrected it. But what do you have to say about that? Yes. Well, at no point did defense counsel below argue against aggregation, which is the claim we're making today. The calculations maybe have been a bit off throughout the sort of sentencing memo and some of the arguments during the revocation hearing. But he's always grappling with what the court is allowed to do in terms of the limits it can impose or the limits that it's facing for both supervision and re-imprisonment. And so the numbers get a bit jumbled. But in the critical moment, which is what is required by Rule 51b, the time that the court is to make its order, or when the parties are requesting that the court make its order, he requested a legal sentence. He requested one year of re-imprisonment and no supervised release to follow. And so the court then imposed an illegal sentence, and counsel made his objections. He said the supervised release term exceeds what's allowed by statute. The re-imprisonment term, there should have been an accumulation, and therefore it surpassed the statutory maximum as well. The court noted the objections, showing an understanding of the objections that were being made, which is why we have waiver right to avoid that problem, to avoid the court not knowing what the error might have been. The court here had an opportunity to correct itself, to correct the illegal sentence. Chose not to. Told the counsel they could appeal. Government had an opportunity to weigh in. Did not. Earlier, they did argue against aggregation at the time of the illegal sentence. Made no comment once the objections were made. And now the appeal has been made, as was our right. And so the idea that we've waived any claim of error here is incorrect. The objections were made. An illegal sentence was requested. And that's why the standard of review here is de novo. So if we look briefly at Section H as well, I mean, as we've discussed already, the government concedes that Section H also imposes an aggregate limit on prior re-imprisonment when imposing a new term of supervised release. All other circuits that have contemplated this issue have found the same way. The plain language also compels that. It says that when imposing a new supervised release term, they can impose what's authorized by statute, mirroring the language in Clause 1 of E3, less any term of imprisonment and prior revocation. So here, the 22 months have been imposed in prior revocations for Mr. Ozuiz-Valle. So all he had left was, again, 14 months. So the court could have imposed some combination of re-imprisonment and supervised release to reach that number, to reach those 14 months, but imposed 24 months of re-imprisonment, surpassing the three years, and an additional year of supervised release, which it was not authorized to do. It could not, under Section H, have imposed any more supervised release once it reached that three-year maximum. Have you calculated when he would hit 14 months? Sorry? Have you calculated the month that he would hit 14 months? Well, he would. So he's set to get out. I think he's already actually surpassed that because he will hit his 24 months in June. So it would have been 10 months ago from June. So that would be, I believe, October or somewhere around there of last year. So he already has passed that time. Okay, thank you, Counselor. You're going to have rebuttal. Let me just ask Judge Lynch if she has any questions now, or if not, she can do a rebuttal. No, thank you. Thank you, Your Honors. Okay, Mr. Bornstein, your turn for the government. Please identify yourself. Good morning, Judge. I hope you may please the Court. David Bornstein on behalf of the United States. The Court need not reach the merits of this appeal. That's because the defendant has doubly waived each of his claims of error. He waived them first by taking a contrary position below, as to both 3583 subsection E3 and subsection H. He's done so again by forfeiting the claims below and failing to argue plain error review in his opening brief. But even if this Court were to reach the merits, he cannot prevail. That's because there is no clear or obvious error in his supervisor lease term under subsection H, nor is there any error at all in his prison sentence under subsection E3. Let me ask you, I believe in your brief, the government concedes that the argument regarding the aggregate supervisor lease, the defense is correct. Am I correct in that? Yes, we agree that an aggregating construction is the best reading of that statute. Okay, so for all purposes, if we agreed with you and the defense, and what you would be asking is uphold the sentence of 24 months, and that's it. He's served his time, and that's it. Yes, the defendant will receive no further supervisor lease. And no further prison, because he's out. Yes. Well, I suppose that if he were to be revoked again, there would be a possibility of prison. But he has no further supervisor lease, so he can't be revoked again. Well, no, Your Honor. We believe that this sentence would be affirmed under plain error review. And that follows because, first of all. Oh, but after that sentence, the day he's released, if he serves those 24 months in October, what counsel said, that's it for him. There's no supervision to follow. His current sentence has a one-year supervisor lease term. Okay, but if we agree with the parties that it shouldn't exist, it's improper, then he serves 24 months, and he's out. No more jurisdiction over him from the probation office or the court. Well, no, Your Honor. And the reason why is we're under plain error review. Under plain error review, you can – All right, so if we disagree that plain error is applicable, do you agree then that he has no more supervisor lease? Yes, Your Honor. Okay. We do. Okay, and under plain error, you prevailed. What's going to happen is he might serve his 24 months. He's out on supervisor lease. In the ideal world, he would never revoke, you know, violate his conditions. But based on the track record, there's a probability he would. Then he would be back. So that's – and then he would have to raise the issue again at that point. At that point, he could tell the court that the parties agreed that he shouldn't be – that it's an erroneous sentence. He shouldn't have supervisor lease. But it's not an illegal sentence. Moreover, I really want to make clear, Your Honor. Mr. Bornstein. Yes. Even if we were to apply plain error review and affirm this sentence, why shouldn't we just take the government's concession and an opinion affirming, nonetheless say that henceforth going forward, the government has conceded this point about supervised release? Of course. We have conceded the point. And going forward, our office's position is that there is an aggregating construction to subsection H. I would like to direct the court's attention to United States against Richard. This is a directly on point case. It's from 2000. It's 234F3763. In that case, defendants were contesting a restitution order, which as this panel knows is part of criminal sentence, is part of criminal punishment. Under the statute at issue, the restitution statute, is a mandatory victim restitution act, the maximum amount of restitution was capped at the value of the property lost. The district court, however, had gone above that legal limit. It had given restitution in the amount of the property lost plus an additional $350,000 of consequential damages. Seven other circuit courts looking at the language of the statute, agreed it does not provide for consequential damages. This court, however, affirmed that sentence under plain error review. And it did so because this court had never previously construed the language of that statute. The same analysis applies here. It is uncontested. There is no binding authority on point in this circuit construing subsection H and giving it an aggregating construction. Number two, there is no plain error under the plain language of the statute. The defendant concedes on page nine of his opening brief that subsection H does not quote-unquote explicitly require aggregation. Now in his reply brief, he tries to walk back that concession as immaterial, but he's wrong. It's actually deeply significant and it shows why there's no clear or obvious error. First of all, the concession is factually correct. If you look at subsection H, there is no explicit requirement for aggregation. And it's also deeply meaningful under this court's precedent. In the United States against Nwesi Pena, and the citation for that case is 711F3-191, this court, in an opinion by Judge Thompson, was asked under plain error review whether the define and punish clause of the U.S. Constitution had a nexus requirement. And this court looked at the plain language of that constitutional provision, found it did not quote-unquote explicitly require a nexus, and thus found no plain error in the district court failing to apply one sua sponte. The same analysis applies here. Because the plain language of the statute does not require aggregation, there could have been no plain error. And even aside from that concession, it's clear if you look at the language of the statute. Let me ask you, even if there's no plain error, the district court, or we affirm, we're exceeding the authority to do that. Isn't that an illegal sentence anyway? No, Your Honor, it's an erroneous. To be an illegal sentence, the defendant needs to prove plain error. The same thing happened in Richard. In fact, the court said even if the defendant were correct, and this is from Richard's itself, even if the defendant were correct that he had an illegal restitution order since it went above the cap set by statute, he still could get no relief under plain error review, again, because this court had never construed that statute. Or he would have to, the minute, if we affirm, as you argue, no plain error, the next thing he has to do in Puerto Rico, the minute it happens, is file habeas corpus at 2255. Exactly, Your Honor. We believe that seeking 2255 relief would be the proper avenue for relief here. It's not bending the rules of plain error review in this circuit. But I'd also like to make clear the defendant has waived this claim of error by taking an inconsistent position below. He did so first in his sentencing memorandum, that's docket entry 134 at page 2, where he asked the court to sentence him to four months of imprisonment and 12 months of supervised release. And that presumes a non-aggregating view of subsection H, because we all agree subsection H has a cap of 36 months of supervised release. And then you have to subtract from that any term of imprisonment that has been imposed upon revocation. As I've argued, there's nothing about that language that requires aggregation. But if we were to aggregate, the defendant had already served 22 months in prison, 36 minus 22 is 14. He had asked for an additional four months of imprisonment, that's 10 remaining for supervised release, but he asked for 12 months, showing he was not aggregating below. Now, the defendant says that was a mere mathematical error, but we know it wasn't. And we know it wasn't by looking at his argument to the district court. If you look at page 66 and 67 of the appendix, he had switched tack. Before the district court at his final revocation hearing, he was now asking for no supervised release time. But in explaining why, he did not articulate an aggregating construction of subsection H. He did not say that there was any statutory limit on the district court's power. Rather, he said that he could end up in a quote-unquote non-ending situation whereby he was quote, in and out of jail all the time, close quote, because the court could keep giving him, and I'm quoting, keep giving him treatment and revoking him and giving him treatment and revoking him. By telling the court that he believed that under the statute, he could end up in a non-ending situation, he necessarily was articulating a non-aggregating view of subsection H. Because if subsection H aggregates prison time, and as a result, once you exceed 36 months in prison, you can get no more supervised release, you wouldn't have a non-ending situation. All of the defendant's arguments below do not make any sense if he was arguing in favor of aggregation. He simply wasn't. I think it's even clearer that he waived his claims below for his prison term under E3. On appeal, he claims that the district court lacked the authority to sentence him to 24 months of imprisonment. However, he specifically told the court on pages 62 and 63 of the appendix, and I quote, we can give him two years, close quote. He then tells the court, quote, the length of the sentence, that could be a maximum of two years, that's an option. The defendant repeatedly told the court that an available sentencing option was two years of imprisonment, and now he's coming up on appeal claiming that was error. That is clearly waived under this court's precedent in Ramirez-Rivera. Ramirez-Rivera, let me quickly give you the citation, is 241 F3rd 37. The defendant believes that he needs to have requested the sentence he received in order for him to have waived his claim of error, that's not right. In Ramirez-Rivera, the district court gave an upwardly variant revocation sentence. The defendant objected to that sentence. But in objecting to the sentence, he said, we understand that the court has the power to impose the sentence, but we ask you to reconsider for the following reasons. On appeal, he raised a claim of error that the district court lacked the authority to give that sentence under a statute. And this court unanimously held that he had waived that claim of error because in objecting to the sentence, he conceded that the court had the power to impose it. Similarly here, the defendant admitted the court had the power to impose 24 months of imprisonment, so he cannot claim that that was error. In any event, the defendant conceded that we do not aggregate time anymore under E3. He made that concession on pages 65 and 66 of the appendix, where he says, before you would accumulate that time, that's his prior 22 months of imprisonment on revocation, and he says now you don't accumulate that time. And in any event, it's clear the defendant was not advocating for an aggregating construction because we all agree the cap for a Class C felony is 24 months. If you were to aggregate prison time, he had already served 22 months, that would leave a maximum of two months available, had he been arguing for an aggregating construction. But as I noted, he never asked for two months or a maximum of two months. He asked for four months in a sentencing memo and 12 months at the hearing. And although he then objected, saying he thought that 24 months was excessive and that one should not receive more than accumulated of 24 months, those objections must be read in light of his concession 10 pages earlier that we do not aggregate that time. That was a concession that the district court would have understood as directed to his discretion. But in any event, I'd like to reach the merits. He cannot prevail on the merits. As I already mentioned when it comes to subsection H, he has conceded and he makes no argument that the plain language of the statute requires an aggregating construction. Now, the defendant argues that the United States, because we cited some language, quoted some language from the Fourth Circuit's decision to Maxwell, we must agree that the plain language of the statute compels a reading. But that's simply not the case. We quoted language from Maxwell that we agreed with, which is that once properly construed in context, the term any means all in subsection H. Simply citing that language does not mean we agree with the rest of that decision's analysis, and we do not. There is simply no way to view an aggregating construction as being compelled by language of the statute. The dictionary definition of any, as we noted, is one, some, or all. Within the statute itself, any has different meanings. In subsection H, it means all. In subsection E3, it means one. And as this Court said in the United States against Caraballo-Rodriguez, which Judge Lynch wrote for the Court back in 2007 as 480F3-62, and that, by the way, was upholding a criminal conviction on plain error review against the claim that the defendant's conduct wasn't even criminal. This Court said that if a term of a statute has multiple dictionary definitions and thus requires judicial construction in order to understand, there cannot be any plain error in a district court's construction of that statute under the language of the statute. And there is nothing about the term we're focusing on here, any term of imprisonment opposed upon revocation of supervised release, that requires a court to deem that it means all terms of imprisonment on all revocations of supervised release, as opposed to what the defendant proposed below and the Court accepted below and all the parties agreed to below, that it meant any term of supervised release based upon this revocation. Finally, there is no error in the 24-month prison term under subsection E3. The text of that issue – oh, I quickly want to make one other note, briefly. The defendant's argument against subsection E3 has changed at oral argument. What my friend articulated here does not appear in their brief. Her argument now is that there's an aggregate limit under Clause 1 of subsection E3, not Clause 2. That was not the argument they made in their opening brief. The argument in their opening brief is that in Clause 2, when the statute says, on any such revocation, a defendant may not receive more than two years in prison, that that meant that you aggregated together those 24 months. That is a new argument. It should be rejected. And in any event, if you want to read the language of Clause 1, it clearly shows you don't aggregate. Here it is. This is section E3. The Court may require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that results in such term of supervised release. That's what my friend focused on. But this is what follows. Without credit for time previously served on supervised release. That goes to show the plain language of statute says you're not aggregating prior supervised release terms. And then what was their actual argument on appeal? That when it later says, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than two years in prison of such offense of the Class C felony, Judge Helpe, as he noted, every single court of appeals including this one, albeit in dictum, has agreed that that language sets forth a per-revocation cap of imprisonment. That is the best reading of the statute. Ten courts have said so in a holding. This court in the Third Circuit has said so in dictum. But it's also clear from the amendment history of the statute. Prior to 2003, courts had interpreted the statute as setting forth an aggregate cap on re-imprisonment. This court in Tapia Escalera said that that went against the plain language of the statute. However, the court agreed to follow unusually explicit legislative history. I'll just quickly sum up and say that the court amended the statute based upon language given to it by the Department of Justice in October 2002. And the Department of Justice said this will make it clear that E-3 sets forth a per-revocation cap. In sum, Your Honor, we ask you to affirm the judgment of revocation. The easiest way to do so is to hold that the defendant has doubly waived the claims of error by taking an inconsistent position and not arguing plain error on review. In any event, if you are to reach the merits, the defendant cannot succeed since there is no plain error here. Okay. Thank you, Mr. Bernstein. Counsel, I thought, you know, on plain error review, we often say, and there was no error. And I had thought the government's position here as to the reading of E-3 was that there was no error. We said so in dicta earlier. Every circuit, I believe, that has considered it has said that. I take it your plain error argument includes the argument that there was simply no error at all. Yes, Your Honor. Under subsection E-3, we argue that there is no error at all. But as I noted previously, this court has upheld a criminal sentence in Richard on plain error review saying even if the restitution order were erroneous because it went beyond the statutory maximum, still the defendant cannot get relief on plain error review. I would have thought the government wanted this issue settled. On subsection H, Your Honor? E-3. Yes. On E-3, we're asking the court to reaffirm its dictum in Tapia Escalera as to the fact that that statute sets forth a per revocation cap. Thank you. Thank you, Your Honor. Thank you, Counsel. Thank you. Attorney LaRoy, as a three-minute rebuttal, please reintroduce yourself on the record to begin. Joanna LaRoy of the Federal Public Defender on behalf of Mr. Iram Prisvalli. I'd like to make four main points addressing the government's arguments. First, the government states that we have conceded plain error because we cite no prior authority in the circuit for the reading of section H. This is an issue of first impression before this court. Of course, there is no authority. We look to other circuits as persuasive authority, which is what we are doing here. So the government is saying we have a conceding. There is an illegal sentence, but because there's no decision in this court and there's possibly other readings despite this is the best reading, this sentence has to be reaffirmed even though it's illegal under section H. And that's why we're asking the court to clarify that it is an illegal sentence today because we have no authority yet in the circuit saying so. As to this idea that we sort of invited the error by statements made by counsel below, again, the calculations are different. When counsel says you used to aggregate, now you don't aggregate, that's wrong. He's acknowledging that the lack of accumulation of reimprisonment when sentencing on revocation is illegal. It's incorrect. And at the critical moment, Rule 51B only requires at the times the order is imposed that that is when the objections matter for purposes of preserving error. He requested a legal sentence, made the correct objections when an illegal sentence was imposed, the court had the opportunity to correct itself, asked further questions, did not, noted and moved on and showed an understanding and told the counsel to appeal. And that's exactly what we did today. So it was not waived and we can reach the merits of the argument today, especially because the issue is so important. This is a conceded illegal sentence, an illegal deprivation of liberty. So it's especially important to reach the merits of the issue. It's a little difficult, counsel, to adopt the view that it's illegal when your office requested this sentence in the district court. Whether or not you have waived the issue is a different matter, but the government has drawn a distinction between illegal sentences and erroneous sentences, which you seem not to share. Do you have authority to support your view? Well, our view is that it was in violation of what the statute allows and is therefore illegal. So when I say illegal, I mean in violation of the maxima imposed by statute as to both the supervised release term and the re-imprisonment term. Because of the arguments we're making today, that it's limited to the three years and surpassed that both via re-imprisonment and supervised release term. So by illegal, I just mean it has surpassed what was allowed by law under the revocation statute. And that is essentially what counsel Below is arguing. And at the moment that mattered, he says he proposes an illegal sentence. By the way, the court also never indicated that it was relying on any prior statements made. The court proposes a sentence much higher than anything suggested by counsel. And just quickly as to Section E3, again, the Tapia Escalera that this court was when it said that the 2003 amendment may have allowed for the Clause 2, the two-year limit to refresh every time. Again, it is not addressing Clause 1. So we're not saying anything in contrast to what this court has said before, what other circuits are saying. We're just saying that that has to be reviewed. What do you say in response to the government's argument that you did not brief the Clause 1, Clause 2 issue, and you are presenting it for the first time in this court? We actually did brief it. If you look specifically on pages, I think the clearest description is 17 through 19 of our opening brief. There's a thorough discussion of the relationship between Clause 1 and Clause 2. We also state multiple times throughout our opening brief and reply brief that 36 months was the cap as to both re-imprisonment and supervised release term, and therefore the court could have only imposed up to 14 months. So it is fully briefed in the opening brief. Okay. We'll look at the briefs. Okay. Thank you very much. Okay. Thank you, Counselor. Your time is up. Thank you both. That concludes argument in this case. Counsel is excused.